**70**

**UNITED STATES, Appellee,**

v.

**William M. CHURCH, Senior Airman,
U.S. Air Force, Appellant.**

No. 63,950.

ACM 27324.

U.S. Court of Military Appeals.

Argued Oct. 3, 1990.

Decided Jan. 28, 1991.

Certiorari Denied June 24, 1991.

See 111 S.Ct. 2853.

For Appellant: *Major Lynne H. Wetzell* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain Morris D. Davis* (argued); *Colonel Robert E. Giovagnoni* and *Major Paul H. Blackwell, Jr.* (on brief); *Major Brenda J. Hollis.*

*Opinion of the Court*

COX, Judge:

A general court-martial comprised of officer and enlisted members convicted appellant, contrary to his pleas, of attempted premeditated murder, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880. The court-martial sentenced appellant to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to airman basic. The convening authority approved the sentence, and the Court of Military Review affirmed. 29 MJ 679 (1989).

We granted review of this issue:

WHETHER THE MILITARY JUDGE ERRED IN DENYING TRIAL DEFENSE COUNSEL'S MOTION FOR A FINDING OF NOT GUILTY OF THE CHARGE AND SPECIFICATION OF ATTEMPTED PREMEDITATED MURDER, AS THE EVIDENCE FAILED TO SHOW ANY ACTS ON THE PART OF THE APPELLANT BEYOND MERE PREPARATION, OR THAT ANY ACT OF THE APPELLANT TENDED TO EFFECT THE COMMISSION OF THE INTENDED OFFENSE.

This case involved appellant's attempt to have his wife murdered by a person he mistakenly thought was a hired killer. The question before us, essentially, is whether his actions went far enough to constitute a criminal attempt, as opposed to mere solicitation.[1] We hold that his actions were in-

---

**1.** The real stake in this appeal is the sentence. If, as appellant contends, he is merely guilty of soliciting murder, the most he can be confined is 5 years. Para. 105e, Part IV, Manual for

deed sufficient, and we affirm.[2]

Article 80 defines an attempt to commit an offense as *"[a]n act,* done with specific intent to commit an offense under this chapter [Uniform Code of Military Justice], *amounting to more than mere preparation* and tending, even though failing, to effect its commission." (Emphasis added.)

The Manual for Courts–Martial, United States, 1984, lists the elements for attempt as:

(1) That *the accused did a certain overt act;*

(2) That the act was done with the specific intent to commit a certain offense under the code;

(3) That *the act amounted to more than mere preparation;* and

(4) That *the act apparently tended to effect the commission of the intended offense.*

Para. 4b, Part IV (emphasis added).

Finally, the phrase "more than preparation" is explained in the Manual in these terms:

*Preparation consists of devising or arranging the means or measures necessary for the commission of the offense. The overt act required goes beyond preparatory steps and is a direct movement toward the commission of the offense.* For example, a purchase of matches with the intent to burn a hay-

stack is not an attempt to commit arson, but it is an attempt to commit arson to apply a burning match to a haystack, even if no fire results. The overt act need not be the last act essential to the consummation of the offense. For example, an accused could commit an overt act, and then voluntarily decide not to go through with the intended offense. An attempt would nevertheless have been committed, for the combination of a specific intent to commit an offense, plus the commission of an overt act directly tending to accomplish it, constitutes the offense of attempt. Failure to complete the offense, whatever the cause, is not a defense.

Para. 4c(2), Part IV (emphasis added).[3]

The military judge properly instructed the members on the elements of the offense. Specifically with respect to "preparation," the judge instructed that the members must find, beyond a reasonable doubt, that appellant

did a certain act. That is, procuring, assisting, and counseling ... [the agent] to commit, for payment in United States currency, the premeditated murder of ... [Mrs. Church].... [And] that the act amounted to more than mere preparation. That is, it was a direct movement toward the commission of the intended offense.

---

**2.** The granted issue broadly questions the correctness of the judge's ruling denying the defense's motion for a finding of not guilty. *See* RCM 917(d), Manual, *supra.* Appellate defense counsel, however, has particularly attacked the Court of Military Review's purported adoption of the "slight overt acts" test favored in a minority of jurisdictions for legally defining when an attempt has occurred. We note that the Court of Military Review did not adopt this test but relied instead on paragraph 4, Part IV, Manual, *supra,* and on the decision of this Court in *United States v. Byrd,* 24 MJ 286 (CMA 1987). *See* 29 MJ 679, 685, 686.

**3.** Since the Code was enacted, neither the elements of attempt nor the related Manual commentary has changed in substance, except that a discussion regarding voluntary abandonment was added.

Courts–Martial, United States, 1984. If, however, he is guilty of attempted murder, the maximum confinement is 20 years (para. 4e, Part IV, Manual, *supra* ), with the result that his approved sentence would stand.

Of course, if the facts stood as appellant believed and hoped them to be, he would be guilty as a principal to premeditated murder—and conspiracy as well. Arts. 81 and 118, Uniform Code of Military Justice, 10 USC §§ 881 and 918, respectively. Under those circumstances, the *minimum* term he could have received would have been confinement for life. Art. 118. Fortuitously for all concerned, appellant's efforts were frustrated by law enforcement personnel. Thus, murder (Art. 118) is not applicable because the intended victim is not dead. Conspiracy (Art. 81) is also arguably not available because the *agent* did not actually agree to kill Mrs. Church. *But cf. Saienni v. State,* 346 A.2d 152 (Del.1975).

The defense made no objection to this aspect of the instructions.

The members were also properly instructed on the law of solicitation,[4] but evidently they were satisfied on the facts that appellant's actions went beyond mere preparation. The Court of Military Review, with its factual and legal review authority, was also convinced. *See* Art. 66(c), UCMJ, 10 USC § 866(c).

It is said that "[t]he modern doctrine of criminal attempts ... had its origin in the Court of Star Chamber," which was abolished in 1640. 2 W. LaFave & A. Scott, *Substantive Criminal Law* 18–19 (1986). Apparently, courts have struggled ever since to distinguish between acts constituting mere preparation and those constituting actual attempts. Over the years, courts have developed a variety of "tests" to help them find the dividing line. These tests include: the "proximity approach" (Was "the defendant's act ... sufficiently proximate to the intended crime"?); the "probable desistance approach" (Would "the act required to establish" an attempt, "in the ordinary course of events" have "result[ed] in the commission of the target crime" but "for the intervention of some extraneous factor"?); and the "equivocality approach" (Could the act have had any "other purpose than the commission of" the "specific crime"?). 2 LaFave & Scott, *supra* at 31–36. *See also* G. Williams, *Criminal Law: The General Part* 622–32 (2d ed. 1961); § 5.01, American Law Institute *Model Penal Code and Commentaries* at 321–29 (1985).

In discussing this "preparatory-perpetrating dichotomy," Professors Perkins and Boyce quote the California Supreme Court for this proposition:

> "Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made."

*People v. Murray*, 14 Cal. 160 (1859), quoted in R. Perkins & R. Boyce, *Criminal Law* 617 (3d ed. 1982).

However, as those authors hasten to observe, perhaps prophetically:

> The difference between the two [preparation and attempt] may not be "wide" as a matter of fact. As one approaches the other we may find a difficult "twilight zone" rather than a sharp and clear dividing line.

> \*    \*    \*    \*    \*    \*

> The preparatory-perpetrating dichotomy is useful in discussing situations of a rather general nature, but the actual dividing line between the two is shadowy in the extreme. *There is reason to believe that in close cases the decision is based upon other considerations and that the label attached is that appropriate to the conclusion reached—after it is reached.*

*Id.* at 617, 621 (footnote omitted; emphasis added).

Not surprisingly, the cases run the gamut, with the result that each party herein can claim the instant facts to be within those of some case.[5]

---

4. Except for four specific offenses, *see* Art. 82, UCMJ, 10 USC § 882, soliciting another to commit an offense is ordinarily charged under the general article, Art. 134, UCMJ, 10 USC § 934. The Manual for Courts-Martial lists the elements of Article 134 solicitation as:

>     (1) That the accused *solicited or advised* a certain person or persons to commit a certain offense under the code other than one of the four offenses named in Article 82;
>     (2) That the accused did so with the intent that the offense actually be committed; and
>     (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 105b, part IV (emphasis added).

5. For cases tending to support appellant, *see State v. Otto*, 102 Idaho 250, 629 P.2d 646 (1981); *Johnson v. Sheriff, Clark County*, 91 Nev. 161, 532 P.2d 1037 (1975); *State v. Lourie*, 12 S.W.2d 43 (1928); *State v. Davis*, 319 Mo. 1222, 6 S.W.2d 609 (1928); *Hobbs v. State*, 548 S.W.2d 884 (Tex. Cr. App.1977); *Hutchinson v. State*, 315 So.2d 546 (Fla.App.1975); *People v. Adami*, 36 Cal.App.3d 452, 111 Cal.Rptr. 544 (1973).

In effect, appellant asks us to hold, as a matter of law, that his actions did not amount to more than mere preparation. *See* Art. 67(c), UCMJ, 10 USC § 867(c) (1990). On these facts, which are not in dispute and are more fully set out by the court below, 29 MJ at 681, we decline to so hold.

■ Essentially, appellant, who was stationed in North Dakota, had been in the market for several months for someone to kill his estranged wife. She lived in Michigan with the couple's 20–month–old son, and her parents, brothers, sisters, and grandfather. Eventually some of appellant's associates in whom he had confided began to take him seriously, and they reported the matter to the Office of Special Investigations (OSI). Shortly thereafter, an undercover OSI agent was presented as a "hit man," and appellant fell for it.

In a motel room meeting in North Dakota, appellant provided the agent with a partial payment; expense money for the round trip flight; annotated street maps of the vicinity of Mrs. Church's residence; diagrams of the house; photographs of Mrs. Church and their son; descriptions of all the people in the house, including where they slept, what kind of cars they drove, and what their work schedules were; as well as the locations of the guns and dogs. Appellant also approved use of the weapon the agent presented, a .22–caliber semi-automatic pistol with silencer, and he expressed a preference where on the victim he wanted the shots placed. The job was to be done while appellant was conspicuously on duty in North Dakota. Unbeknownst to appellant, the entire conversation was video and audio taped.

Two days later, the agent called appellant from Michigan with the news that appellant's wife had moved and that it would cost more to locate her and accomplish the job. Appellant was apologetic and promptly agreed to the higher amount. He also caused a friend in North Dakota to call telephone Information and obtain his wife's new phone number. The next day the agent called back to tell appellant that he had located the intended victim and that the job would be done shortly. Appellant expressed satisfaction and promised to continue efforts to raise the additional money.

Two days after that, appellant was notified through command channels that his wife had been murdered. Appellant put on "a Class A act" of grief in the unit. That same day, he was notified by the undercover agent to meet him at the North Dakota motel. Appellant arrived, expressed satisfaction with the job done, paid the agent as much of the balance as he had raised, and identified his wife's "body" from a staged photograph. Appellant was then apprehended. This meeting also was video and audio taped. Appellant's conviction of attempted premeditated murder was based upon essentially the foregoing evidence.

■ It is clear that appellant did everything he thought not only necessary but possible to make the enterprise successful —before, during, and after the supposed crime. Looking to his conduct only,[6] we agree the evidence was sufficient for a rational factfinder to find, beyond a reasonable doubt, that his actions exceeded mere preparation. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see generally United States v. Wagner,* 884 F.2d 1090, 1095–96 (8th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *United States v. Candoli,* 870 F.2d 496, 502–3 (9th Cir.1989); *United States v. Mandujano,* 499 F.2d 370 (5th Cir.1974),

For cases tending to support the Government, see *United States v. Martinez,* 775 F.2d 31 (2d Cir.1985); *State v. Manchester,* 213 Neb. 670, 331 N.W.2d 776 (1983); *State v. Sodders,* 208 Neb. 504, 304 N.W.2d 62 (1981); *Braham v. State,* 571 P.2d 631 (Alaska 1977); *Saienni v. State, supra; State v. Mandel,* 78 Ariz. 226, 278 P.2d 413 (1954); *Stokes v. State,* 92 Miss. 415, 46 So. 627 (1908); *Howell v. State,* 157 Ga.App. 451, 278 S.E.2d 43 (App.1981); *State v. Gay,* 4 Wash.App. 834, 486 P.2d 341 (App.1971).

6. Since the agent was not a party to the agreement and never intended to endanger the intended victim, none of the actions he took tended to effect the commission of the offense. Therefore, none of his actions, such as getting on the airplane and flying to meet the intended victim, can be charged vicariously to appellant. *See* G. Williams, *Criminal Law: The General Part* 778 (2d ed. 1961).

*cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); *United States v. Watson,* 31 MJ 49, 53 (CMA 1990); *United States v. Johnson,* 30 MJ 53, 57 (CMA 1990); *United States v. Presto,* 24 MJ 350 (CMA 1987); and *United States v. Byrd,* 24 MJ 286 (CMA 1987). Accordingly, the military judge did not err in denying appellant's motion for a finding of not guilty of the Charge and specification of attempted premeditated murder.[7]

The decision of the United States Air Force Court of Military Review is affirmed.

Senior Judge EVERETT concurs.

SULLIVAN, Chief Judge (concurring):

I agree with Judge Cox' practical approach to determining the "actus reus" necessary for conviction of attempt under Article 80, Uniform Code of Military Justice, 10 USC § 880. It focuses on the totality of circumstances of a particular case and not on linguistic formulations. *See United States v. Wagner,* 884 F.2d 1090, 1096 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). Such an approach is consistent with prior military case law. *See United States v. Johnson,* 7 USCMA 488, 493–94, 22 CMR 278, 283–84 (1957); *United States v. Choat,* 7 USCMA 187, 191–92, 21 CMR 313, 317–18 (1956). It is also consistent with Federal case law which is noted in our earlier decisions. (7 USCMA at 494, 22 CMR at 284; 7 USCMA at 191, 21 CMR at 317) *See United States v. Coplon,* 185 F.2d 629, 633 (2d Cir.1950), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952). Finally, it is consistent with later Federal case law which we have recently cited with approval in *United States v. Presto,* 24 MJ 350, 352 (CMA 1987). *See United States v. Mandujano,* 499 F.2d 370 (5th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

Appellant's argument for a more dogmatic approach strictly delineated by the state court decision in *State v. Davis,* 319 Mo. 1222, 6 S.W.2d 609 (1928), must be rejected. That vintage decision is neither controlling nor persuasive. *See generally United States v. Thomas,* 13 USCMA 278, 286, 32 CMR 278, 286 (1962). It also does not reflect "established principles of criminal law," so far as I can discern them. *See generally United States v. Mandujano, supra* at 373 n. 5; *State v. Molasky,* 765 S.W.2d 597, 600–01 (Mo. banc 1989); *see State v. Kilgus,* 128 N.H. 577, 519 A.2d 231 (1986); *cf. State v. Otto,* 102 Idaho 250, 629 P.2d 646 (1981). Moreover, nothing in paragraph 4b or c, Part IV, Manual for Courts–Martial, United States, 1984, requires adoption of that particular state court decision. Finally, I could not consider such a Manual provision controlling if it conflicted with our case law interpreting Article 80. *See United States v. Watson,* 31 MJ 49, 52 (CMA 1990).

---

**7.** These vast distinctions in punishment ceilings among solicitations, attempts, and completed offenses—at least when the crimes are very serious—reflect the traditional view that the punishment should be commensurate with the *resulting harm,* irrespective of the badness of the actor or the seriousness of the threat. The modern approach, on the other hand, focuses on

> the antisocial disposition of the actor and the demonstrated need for a corrective sanction, [with the result that] there is little difference in the gravity of the required measures depending on the consummation or the failure of the plan.

Comment, § 5.05, A.L.I. *Model Penal Code and Commentaries* 490 (1985).

In other words, the trend is to make the punishment levels generally the same or nearly the same for solicitations, attempts, and completed offenses—based upon the badness of the actor, not upon the fortuitousness of the results. *See, e.g.,* § 5.05, Model Penal Code, *supra;* § 2X1.1, Federal Sentencing Guidelines; §§ 12.32(a) and 15.03(d), Vernon's Code of Texas Annotated, Penal Code. Narrowing these vast discrepancies in punishment ceilings would lessen the premium put on factfinder hair-splitting as the evidence proceeds down the continuum of solicitation, conspiratorial agreement, overt act in furtherance of the conspiracy, act beyond mere preparation tending to effect commission of a crime, etc. It would also remove the illogical consequence that the punishment for soliciting premeditated murder can be no greater than that for soliciting the making of a check of $101 without sufficient funds. *See* para. 49e(1)(b), Part IV, Manual, *supra.*

Turning to the record, I also must disagree with appellant's self-serving characterization of the evidence as merely showing acts of solicitation. As noted by Judge Cox, the evidence shows that appellant solicited someone to murder his wife, paid that person money, participated in planning the murder, provided information to facilitate its commission, and finally gave the go-ahead approval on the day the expected murderer was actually ready to commit the crime. Evidence of the act of final approval distinguishes this case from *State v. Davis, supra* and, in any event, clearly satisfies the "more than mere preparation" and "tending ... to effect its commission" standards found in Article 80. *See United States v. Johnson* and *United States v. Coplon,* both *supra.* Accordingly, I agree with Judge Cox that there was sufficient evidence in this case for a rational juror to find this element of the offense beyond a reasonable doubt. *United States v. Martinez,* 775 F.2d 31, 35 (2d Cir.1985). *Cf. United States v. Candoli,* 870 F.2d 496, 503 (9th Cir.1989); *United States v. Buffington,* 815 F.2d 1292, 1303 (9th Cir.1987).