UNITED STATES, Appellant
and Cross–Appellee,

v.

Charles E. SCHOOF, Operations
Specialist Third Class U.S. Navy,
Appellee and Cross–Appellant.

No. 67,807.
CMR No. 90–3831.

U.S. Court of Military Appeals.

Argued March 4, 1993.

Decided June 1, 1993.

For the Accused: *Captain Dwight H. Sullivan*, USMC (argued).

For the United States: *Lieutenant Commander Lawrence W. Muschamp*, JAGC, USN (argued); *Colonel T. G. Hess*, USMC and *Commander W. F. Shields*, JAGC, USN (on briefs).

## Opinion of the Court

WISS, Judge:

At his general court-martial, Schoof pleaded guilty to conspiracy to commit espionage, attempted espionage, wrongful use of cocaine (two specifications), and solicitation to aid and abet espionage, in violation of Articles 81, 106a, 112a, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 906a, 912a, and 934, respectively. A panel of officers sentenced him to a dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence except for reducing the period of confinement to 20 years pursuant to a pretrial agreement.[1]

In the Court of Military Review, Schoof mounted two challenges to the providence of his guilty pleas to attempted espionage. That court agreed with Schoof on one issue but rebuffed him on the other. 34 MJ 811 (1992). Thereafter, the Judge Advocate General certified a question to this Court regarding the correctness of the former decision (the one in Schoof's favor), and this Court granted Schoof's subsequent petition regarding the correctness of the latter decision (the one against him).[2]

During the briefing cycle on the certified question, Schoof filed with this Court a motion to dismiss that question. In support of the motion, he contends that Article 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989), by which the Judge Advocate General may certify a question of law to this Court, constitutes a vehicle for "automatic appeal" by the Government that, as applied, is not similarly available to an accused. He argues that such "disparate treatment of similarly-situated parties" has "no rational basis" for support. Accordingly, he urges that Article 67(a)(2), as applied, constitutes a denial of equal protection and due process of law. Appellee's Motion to Dismiss

---

1. We heard oral argument in this case at the United States Naval Academy, Annapolis, Maryland, on Thursday, March 4, 1993, as part of "Project Outreach." *See United States v. Allen*, 34 MJ 228, 229 n.1 (CMA 1992).

2. Certified issue:

   WHETHER THE UNITED STATES NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN HOLDING THAT A PLEA OF GUILTY TO ATTEMPTED ESPIONAGE WAS NOT PROVIDENTLY MADE ALTHOUGH IT IS SUPPORTED BY THE ACCUSED'S ADMISSION THAT HE CONSPIRED WITH ANOTHER NAVAL MEMBER TO REMOVE CLASSIFIED MATERIALS FROM A CLASSIFIED MATERIALS SAFE WITHIN THE COMBAT INFORMATION CENTER OF HIS VESSEL, DID IN FACT REMOVE THEM TO HIS OWN LOCKER, CONTACTED THE SOVIET EMBASSY WITH AN OFFER TO SELL THE MATERIALS, AND, WITH THE MATERIALS IN HIS POSSESSION, DROVE A PORTION OF THE WAY TOWARDS WASHINGTON D.C. FROM NAVAL BASE, NORFOLK, BUT ABORTED THE TRIP BEFORE HE REACHED HIS DESTINATION WITHOUT HAVING ABANDONED HIS CRIMINAL DESIGN.

   Granted issue:

   WHERE AN ACCUSED INDICATES THAT HE ABANDONED A CRIMINAL ENTERPRISE BECAUSE "I CHANGED MY MIND" AND THEN LATER THE SAME NIGHT ATTEMPTED TO REVIVE THE CRIMINAL ENTERPRISE, MUST THE MILITARY JUDGE INQUIRE INTO THE POTENTIAL DEFENSE OF VOLUNTARY ABANDONMENT.

Certified Issue or Summarily Affirm [hereafter Motion] at 2.

Now, having heard oral argument on this motion to dismiss as well as on the certified and granted issues, we hold as follows:

(1) Schoof's motion to dismiss the certified issue is denied. Having not requested certification of any question of law by the Judge Advocate General, Schoof lacks standing to challenge application of Article 67(a)(2) on the grounds that it denies him equal opportunity with the Government to reach this Court. Additionally, since this Court granted review on the only issue raised by Schoof in his petition, any challenge to his inability to bring that issue to this Court via certification is moot;

(2) The certified question is answered in the affirmative. The Court of Military Review erred as a matter of law in concluding, under all the circumstances of this case, that Schoof's pleas of guilty to attempted espionage were improvident because his actions had not gone beyond mere preparation;[3] and

(3) The issue in the petition on which we granted review is answered in the negative. Under the circumstances of this guilty-plea inquiry, Schoof's repeated claim to have "changed my mind" in the midst of pursuing his planned espionage does not reflect "a complete and voluntary renunciation of his criminal purpose." § 5.01(4), ALI Model Penal Code, *reprinted in ALI Model Penal Code and Commentaries* (hereafter *Commentaries*) 296–97 (1985). As such, his purported change of mind does not constitute a substantial inconsistency with his plea of guilty.

I

■ The Court of Military Review published its decision in this case on January 30, 1992. The Judge Advocate General ordered the case sent to this Court for review of the certified question on March 2, 1992,

but Schoof moved to dismiss the certified question on March 17. The Government, of course, opposed Schoof's motion, and this Court indicated that we would hear oral argument on the motion in conjunction with future scheduling of argument on the merits of the certified question. In the interim, Schoof filed a petition for grant of review on May 18, 1992, which we granted on October 28, 1992. Accordingly, we ultimately heard oral argument on the motion and on both the certified question and the granted issue raised by Schoof.

Article 67(a), UCMJ, 10 USC § 867(a) (1989), charges that this Court "shall review the record in ... (2) all cases reviewed by a Court of Military Review which the Judge Advocate General orders sent to the Court of Military Appeals for review ..." On its face, the statute is party-neutral and simply serves as a means by which a Judge Advocate General can ask this Court to address itself to an important or controversial legal issue that has significant impact on the military justice system. *See United States v. Hoff,* 27 MJ 70, 74 (CMA 1988)(Everett, C.J., concurring in part and dissenting in part).

Schoof, however, complains that, as applied in more recent times, the provision has become no more than an unmasqueraded vehicle for government appeal to this Court from a decision adverse to the Government in the Court of Military Review. In support of this contention, he has filed documents which he argues demonstrate that, in virtually every instance in which the Government asks the Judge Advocate General to certify a case to this Court, that officer does so; in contrast, he argues that the documents demonstrate that the Judge Advocate General virtually never certifies a case to this Court in which the Government has prevailed in the Court of Military Review. *But see United States v. Monett,* 16 USCMA 179, 180 n.1, 36 CMR 335, 336

---

**3.** We answer the certified question, considering the facts indicated therein as well as others that are reflected in the providence inquiry. We do not, however, answer it in the context of the trappings of legal conclusions that are argued in

the question, such as the accused's having "contacted" the Soviets and the accused's having "aborted" his plan "without having abandoned his criminal design"—both, matters that Schoof disputes in his brief on the granted issue.

n.1 (1966)("The Judge Advocate General has acted not only in cases in which the decision of the board of review has been favorable to the accused, but also when the decision has been adverse to him.").

Graphically, Schoof asserts: "One must go back more than *eight years* to find the last case in which a Judge Advocate General or Transportation Department General Counsel certified an issue for the accused's benefit. *United States v. McBride*, 17 MJ 105 (CMA 1983).... " He continues: "Between *McBride* and October 31, 1991 (the last date for which this Court's Daily Journal has been distributed [as of the date of Schoof's filing his brief on this motion]), 80 cases were certified to this Court; in every single one of these cases, the government was the appellant and the accused the appellee." Motion, *supra* at 7.

Schoof urges that this modern-day application of the statute offers the Government an unabashedly automatic review by this Court, while an accused, by contrast, must petition for exercise of this Court's discretionary review. *Compare* Art. 67(a)(2) (1989) *with* Art. 67(a)(3) (1989). He concludes that this "disparate treatment of similarly-situated parties" has "no rational basis" and, thus, "violates the accused's right to equal protection of law and due process of law." [4] Motion, *supra* at 2. He relies, among other authority, on this Court's decision in *United States v. Gallagher*, 15 USCMA 391, 394, 35 CMR 363, 366 (1965), and on several decisions of the Supreme Court of the United States.

The Government's response is forthrightly combative. First, taking issue with Schoof's legal premise, it contests his assertion that he and the United States are similarly situated: "The appellee is a convicted servicemember, charged with criminal trespasses against the laws of the United States. The United States is the sovereign. The sovereign and the subject are not equally situated." Government Answer to Appellee's Motion to Dismiss Certified Issue [hereafter Answer to Motion] at 1.

Second, the Government argues that use by the Judge Advocate General of Article 67(a)(2) in the manner alleged by Schoof simply reflects that that provision is "the counterpart of the accused's right to seek discretionary review," without which the Government is foreclosed from this Court in cases in which it does not prevail in the Court of Military Review. Answer to Motion, *supra* at 4. *See generally United States v. Caprio*, 12 MJ 30 (CMA 1981). Without even passingly challenging Schoof's statistical basis for his argument, the Government summarizes its legal position in these terms: "Thus, the simple answer to appellee's complaint that the Judge Advocates General utilize the certification machinery as a vehicle for government appeals is that he is right; they do; and so what?" Answer to Motion, *supra* at 5.

Despite the provocative posture of the relative positions of the parties on this motion, we conclude that we need not resolve the merits of the arguments in this case. Schoof does not contest that the Judge Advocate General has the legal right to send this case to this Court under Article 67(a)(2); indeed, nowhere in his brief does Schoof submit that, of all the cases in modern times in which the Judge Advocate General has certified an issue in favor of the Government, that official exceeded his authority in doing so. Rather, Schoof contends in effect that the Judge Advocate General improperly uses his statutory power under that provision by not sending cases to this Court in which the Government wins in the Court of Military Review.

That would seem, however, to be an argument better made by an accused who loses in the Court of Military Review and who, unsuccessfully, *requests* that the Judge Advocate General send his case to this Court for automatic review. In other

---

**4.** While the concept of equal protection of the laws applies only to the States through the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment includes the concept of equal protection for actions of the United States. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). We will refer to equal protection in this light.

words, a complaint that an individual has been denied equal protection of the laws must be made by someone who in fact has been denied such equal protection; others lack standing to be heard on that issue.[5]

We acknowledge, as Schoof's counsel pointed out in oral argument on this motion, that this case was a mixed-bag in result below and that, for that reason, until the Judge Advocate General certified the question now before this Court on the last day on which our rules permitted him to do so, Schoof had no motivation to ask for certification of the issue on which he had lost below. *See* Rules 22(b) and 34(a), Rules of Practice and Procedure, United States Court of Military Appeals (1983). Under the circumstances of this case, however, we need not grapple with whether and how this might alter Schoof's apparent lack of standing.

▮ Here, Schoof's claim of unequal treatment by the Government is moot. After the Judge Advocate General had sent the case to this Court to question the correctness of the decision below in Schoof's favor—an action that Schoof does not, and could not, contend was not within the authority of the Judge Advocate General under Article 67(a)(2)—Schoof petitioned this Court under Article 67(a)(3) for a grant of review of the issue on which the decision below went against him. As indicated earlier, this Court granted that petition on the only issue he raised.

In this posture, then, both the Government and Schoof are in precisely the same position as they would be had both parties successfully sought certification by the Judge Advocate General. Schoof is entitled to no more. Specifically, Schoof is not entitled to foreclose the Government from this Court via Article 67(a)(2); he is only entitled, arguably, to equal access to this Court. Here, by one route or another, he has it.

We now proceed to examine the merits of the issues before us.

## II

Schoof, in need of money, concocted a scheme whereby he would sell classified defense material to the then-Soviet Union, and he hatched this plan with a fellow sailor who had access to classified material aboard their ship. Apparently out of concern for not doing serious damage to the United States, the two of them selected material that, while still classified "Secret," had been superceded.

Schoof took possession of the material and kept it in his room. He made three separate telephone calls to the Soviet Embassy in Washington, but none of them elicited a firm commitment of interest by the Soviets, much less a willingness to buy and settlement on a price. Accordingly, Schoof decided to ride his motorcycle from his station in Norfolk, Virginia, to the Soviet Embassy in Washington, D.C.; take the material to the Embassy; and apparently enter and complete the transaction.

The following exchange between Schoof and the military judge during the providence inquiry concerning attempted espionage is relevant to both the certified question and the granted issue:

MJ: Let's talk about this particular offense then. And again, some of it's going to be redundant by what we talked about before, but during this period of time then, from September to December '89, *did you do some overt act relating to this offense?*

ACCUSED: Yes, sir.

MJ: And what was it?

---

5. In addition to Schoof's personal difficulty with standing to raise this issue, he would seem to have one additional difficulty: Even if Schoof had requested certification and even if that certification had been denied, the conclusion is not inevitable that he has been denied equal protection. Although Schoof has presented evidence that virtually all requests by the Government for certification are favorably received, as well as evidence that virtually all of the certified cases in this Court in recent years are a result of government requests, he has offered no evidence that defense appellate divisions have even requested certification—much less, that they have requested and been denied it.

ACCUSED: *Driving towards the Soviet Embassy in Washington, DC, sir.*

\* \* \*

MJ: *Are you satisfied that this was some act more than mere preparation?*
ACCUSED: *Yes, sir*

\* \* \*

MJ: Your intent then was to turn this information over to someone at the Soviet Embassy?
ACCUSED: My intent was to turn it over, sir.
MJ: To actually deliver it to somebody there?
ACCUSED: Yes, sir.

\* \* \*

MJ: *Okay. What happened?*
ACCUSED: *I changed my mind, sir.*
MJ: You were on a motorcycle headed what, up Highway 64?
ACCUSED: Yes, sir.

\* \* \*

MJ: Okay. You say you changed your mind. Is that right?
ACCUSED: Yes, sir.
MJ: *What did you do when you changed your mind?*
ACCUSED: *Turned around and came back, sir.*
MJ: *Did anything else prevent you from taking this stuff up to Washington?*
ACCUSED: *No, sir.*
MJ: That's it?
ACCUSED: Yes, sir.
MJ: Okay. If you hadn't changed your mind, you were going to go ahead and take it up and deliver it. Is that right?
ACCUSED: Yes, sir.
MJ: So this prevented the completion of the offense?
   ACCUSED: Yes, sir.

\* \* \*

MJ: *So, your intent, when you left here, was to take this stuff and deliver it to someone at the Soviet Embassy, and on the way you changed your mind and you came back?*

ACCUSED: *Yes, sir.*
MJ: *And that's the only thing that prevented you from completion of this offense?*
ACCUSED: *Yes, sir.*
(Emphasis added.)

Later in the providence inquiry, the military judge focused on the charged offense of soliciting another to aid and abet espionage. The following portion of that inquiry has relevance to the certified question:

MJ: Okay. *Now, this one, you told me, occurred, I guess, after you came back from your motorcycle ride. Is that right?*
ACCUSED: *Yes, sir.*
MJ: *Was it the same day?*

ACCUSED: *The first time I talked to him, yes, sir.*

\* \* \*

MJ: *Did you request this guy to do something?*
ACCUSED: Yes, sir.
MJ: What was it?
ACCUSED: *I asked him to drive me up to Washington, DC, sir.*

\* \* \*

MJ: Is that because you didn't have a car?
ACCUSED: Yes, sir.
MJ: *Did you also tell him why?*
ACCUSED: Yes, sir.
MJ: What did you tell him, as best you can recall?
ACCUSED: *I told him that I wanted to deliver some microfiche to the Soviet Embassy.*
MJ: *Where did this occur?*
ACCUSED: *At a bar on Shore Drive, sir.*
MJ: At a bar?
ACCUSED: Yes, sir.
MJ: Had you been drinking?
ACCUSED: Yes, sir.
MJ: Were you intoxicated?
ACCUSED: Yes, sir.

MJ: Did you know what you were doing, even though you were intoxicated?

ACCUSED: I remember asking him, sir.

     \*      \*      \*

MJ: ... Did you intend him to help you? I mean, were you serious when you asked him?

ACCUSED: Yes, sir.

MJ: If he had said "Okay, let's go right then," you would have gone, in other words?

ACCUSED: I don't know about right——

(Accused and counsel conferred.)

ACCUSED: I didn't ask him to go right then, that night.

MJ: I mean, well, what I'm trying to get at is, you were serious. You weren't joking about it?

ACCUSED: No, sir.

MJ: *You wanted him to take you up to Washington to deliver microfiche?*

ACCUSED: *Yes, sir.*

MJ: To the Soviet Union?

ACCUSED: (No audible response.)

MJ: So, this offense that you wanted to commit, and you wanted him to help you with, was espionage. Is that right?

ACCUSED: Yes, sir.

     \*      \*      \*

MJ: *Even though that [espionage] didn't occur, it was your intent to commit that offense in asking him to help you. Is that right?*

ACCUSED: *Yes, sir.*

(Emphasis added.)

### A

■ Article 106a provides:

Any person subject to this chapter who, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or *attempts to* communicate, *deliver*, or transmit, to any entity described in paragraph (2), either directly or indirectly, any thing described in paragraph (3)

shall be punished as a court-martial may direct....

(Emphasis added.) To accept Schoof's guilty plea to attempting to deliver microfiche to the Soviets, the military judge had to ensure that Schoof had taken a substantial step—some overt act, beyond mere preparation—toward accomplishing the delivery. *See United States v. Byrd,* 24 MJ 286, 290 (CMA 1987)(Everett, C.J.); *accord United States v. Church,* 32 MJ 70, 71(CMA), *cert. denied,* —— U.S. ——, 111 S.Ct. 2853, 115 L.Ed.2d 1021 (1991); *see also* para. 30a b(2), Part IV, Manual for Courts–Martial, United States, 1984.

As implied by the certified question, the Court of Military Review held that Schoof's guilty plea was improvident because it did not establish that he had taken such a step. In that court's words:

The charge is that he did "attempt to deliver microfiche ... to a foreign government[.]" *As a matter of law,* no reasonable trier of fact could have found the appellant guilty of an attempt to deliver on such evidence.

34 MJ at 816 (emphasis added). We do not agree.

Granted, as the opinion below points out, Schoof never reached either the literal doorstep of the Soviet Embassy or the figurative doorstep of the completed act of espionage. Nonetheless, the Court of Military Review correctly recognized that "[t]he rule in this country seems to be based less upon concerns with the proximity to completion of the crime than on the dangers posed by people ... seriously intent upon committing specific crimes." The court distinguished the two situations as follows:

[T]he inquiry is focused upon the firmness of the defendant's resolve to commit the crime; an overt act is still required, but proximity of the overt act to the completed crime is just one indicium of the firmness of the defendant's resolve, not necessarily the only one that the law will entertain. Consequently, the rule is now phrased as requiring conduct by the defendant which goes beyond mere prep-

aration and constitutes a substantial step toward commission of the crime, *a substantial step being one which is strongly corroborative of the defendant's criminal intent. United States v. Byrd,* [supra].

34 MJ at 813 (emphasis added). *See* §§ 5.01(1)(c) and (2), *Commentaries, supra* at 296.

Still, typically it is not clearcut on which side of the preparation/substantive-step line a given case may fall. In *United States v. Church, supra* at 72, we set out the following passage in R. Perkins & R. Boyce, *Criminal Law* 617 (3d ed.1982), quoting from *People v. Murray,* 14 Cal. 160 (1859):

> "Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made."

However, as those authors hasten to observe, perhaps prophetically:

> The difference between the two [preparation and attempt] may not be "wide" as a matter of fact. As one approaches the other we may find a difficult "twilight zone" rather than a sharp and clear dividing line.

(Citation omitted.)

■ Although falling short of establishing the "litmus test for distinguishing 'preparation' from 'attempt'" that Chief Judge Everett found just as elusive in *United States v. Byrd, supra* at 289, all of these observations do help give some form, some definition, to the distinction that is helpful in this case. En route to concluding his anticipated deal with the Soviets, Schoof had enlisted the aid of a fellow sailor; he had removed classified documents from the ship's classified storage facility and had converted them to his own, personal possession—itself, a chargeable offense; and he had gone halfway on a journey of over 200 miles to the Soviet Embassy in Washington, D.C., to deliver the microfiche to personnel there—something that Schoof's telephone contact at the Embassy had insisted upon, as opposed to their sending someone from the Embassy to pick them up.

We believe that these actions meet the *Murray* test by going beyond "devising or arranging the means or measures necessary for the commission of the offense" and, instead, are a "direct movement toward the commission after the preparations are made." Surely, taking personal possession of classified material in violation of Federal law and going well down the road on a lengthy journey, in the context of the foreign contact having instructed Schoof to bring in the material if he wanted to discuss a transaction, is "'conduct strongly corroborative of the firmness of the defendant's criminal intent.'" *United States v. Byrd,* 24 MJ at 290.

At the very least, Schoof's acts are in the "twilight zone" in which the line between preparation and substantive step may not be clear. *See United States v. Church,* 32 MJ at 72. As such, the court below erred in holding that, as a matter of law, Schoof's actions never went beyond mere preparation. Quite simply, where an accused pleads guilty and during the providence inquiry admits that he went beyond mere preparation and points to a particular action that satisfies himself on this point, it is neither legally nor logically well-founded to say that actions that may be ambiguous on this point fall short of the line "as a matter of law" so as to be substantially inconsistent with the guilty plea. Art. 45(a), UCMJ, 10 USC § 845(a).

Our conclusion that the plea to an attempt was provident requires that we now turn to whether the providence inquiry raised a defense.

### B

■ In *United States v. Rios,* 33 MJ 436, 440–41 (CMA 1991), a unanimous Court acknowledged the availability of abandonment as an affirmative defense to a completed attempt. In doing so, the Court

favorably quoted § 5.01(4), ALI Model Penal Code, to define the defense as well as to recognize its limitations. In part relevant to this appeal, the Model Penal Code embraces the defense where the accused's abandonment of "his effort to commit the crime" was "under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." § 5.01(4), ALI Model Penal Code, *Commentaries, supra* at 296–97. The providence inquiry here does not make clear *why* Schoof "changed [his] mind." It does, however temper that change of mind by revealing that, later the same day, he solicited a newly made friend in a bar back in Norfolk to assist him in continued pursuit of precisely the same crime—delivering the classified microfiche to the Soviet Embassy in Washington, D.C.

Remarkably similar facts appeared in *United States v. Rios, supra.* There, the providence inquiry indicated that, in the midst of robbing a fast-food restaurant, the accused decided, *"I really couldn't go through with this particular act, and I had never committed a criminal act, sir."* *Id.* at 438. Very shortly after desisting in this effort, however, the accused entered a grocery store and, again, set out to rob it—and again *"decided not to go through with this, and to just forget it."* *Id.* at 439.

In holding that the record revealed "sufficient uncontested facts ... to demonstrate ... that the affirmative defense of voluntary abandonment would be unavailable to Rios as to either attempt offense," this Court made these comments as to the first:

In the first attempted robbery, indeed, there is no dispute anywhere in the record that, shortly after Rios had attempted to rob the fast-food restaurant, he drafted a second note and proceeded to try to rob a nearby convenience store. This circumstance *alone* shows that Rios had experienced no change of heart about committing robbery. He hardly had renounced the sin of robbery if he proceeded to rob a second store....

Even if, at some point during the attempted robbery of the fast-food restaurant, Rios had realized that he could not go forward with the robbery, the affirmative defense of voluntary abandonment still was unavailable to him because his abandonment was never *complete.* *Id.* at 440–41.

We are unsure whether Schoof changed his mind because he was dissatisfied with his mode of transportation, as the Court of Military Review surmised; or if, by change of mind, Schoof simply was reflecting a hesitation or second-thought about betraying his loyalty to the United States. We are sure, though, that his prompt actions back in Norfolk the very same day to further advance his criminal effort gives the lie to his appellate claim of "a complete ... renunciation of his criminal purpose." *See United States v. Rios,* 33 MJ at 440. Accordingly, Schoof's comments about his change of mind, in full context of the providence inquiry, do not raise a substantial inconsistency with his guilty plea to attempted espionage.

### III

The certified question is answered in the affirmative.

The decision of the United States Navy–Marine Corps Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further proceedings under Article 66, UCMJ, 10 USC § 866.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.