UNITED STATES, Appellee

v.

Joseph P. REDLINSKI, Seaman Apprentice
U.S. Coast Guard, Appellant

No. 02-0135

Crim. App. No. 1116


United States Court of Appeals for the Armed Forces

Argued November 5, 2002

Decided February 21, 2003

BAKER, J., delivered the opinion of the Court, in which
GIERKE, EFFRON and ERDMANN JJ., joined.  CRAWFORD, C.J., filed a
dissenting opinion.

<u>Counsel</u>

For Appellant:  <u>Commander Jeffrey C. Good</u> (argued).


For Appellee:  <u>Lieutenant Daniel J. Goettle</u> (argued).


Military Judge:  Thomas R. Cahill.




<u>**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**</u>.

Judge BAKER delivered the opinion of the Court.

A military judge, sitting as a special court-martial, convicted the Appellant, pursuant to his pleas, of attempted wrongful distribution of marijuana, wrongful possession of marijuana, wrongful use of marijuana, wrongful use of marijuana while on board a vessel used by the armed forces, wrongful distribution of marijuana, and wrongful distribution of marijuana while on board a vessel used by the armed forces in violation of Articles 80 and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 880 and 912a (2002). The Appellant was sentenced to confinement for four months, forfeiture of $600 pay per month for six months, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged, but suspended all confinement in excess of 100 days in accordance with a pretrial agreement. The Court of Criminal Appeals affirmed the findings and sentence, but credited the Appellant with eight days of pay because of a violation of Rule for Court-Martial 305(k)[hereinafter R.C.M.]. United States v. Redlinski, 56 M.J. 508, 521 (C.G. Ct. Crim. App. 2002).

This Court granted review of the following issues:

I.    WHETHER THE MILITARY JUDGE ERRED BY FAILING TO
      ADEQUATELY EXPLAIN THE ELEMENTS OF ATTEMPTED
      DISTRIBUTION OF MARIJUANA TO APPELLANT, THEREBY
      RENDERING HIS PLEAS OF GUILTY TO THAT OFFENSE
      IMPROVIDENT.

II.   WHETHER THE MILITARY JUDGE ERRED BY ACCEPTING
      APPELLANT'S PLEAS OF GUILTY TO ATTEMPTED DISTRIBUTION OF
      MARIJUANA (SPECIFICATION 2 OF THE CHARGE) WHERE THE
      FACTS SHOW THAT APPELLANT MADE NO MORE THAN INITIAL
      PREPARATION TO COMMIT THE OFFENSE OF DISTRIBUTION OF
      MARIJUANA BEFORE BEING ARRESTED.

For the reasons stated below, we find that the military
judge erred by failing to adequately explain the elements of
attempted distribution of marijuana to the appellant.  Because
we resolve this case on Issue I, we do not reach the second
granted issue.

FACTS

During the providence inquiry, the military judge listed
the elements of attempted distribution of marijuana for the
appellant as follows:

> Essentially that at Long Island, New York, on or about
> 16 February 1999[,] you attempted to distribute some amount
> of marijuana, a controlled substance.  Again, that you
> actually knew you attempted to distribute the substance,
> that you actually knew that the substance you attempted to
> distribute was marijuana or of a contraband nature, and
> that the distribution, if completed, would have been
> wrongful.

Record at 194.

The Appellant then admitted to the military judge that he
had agreed to buy marijuana for a fellow sailor, accepted $300
from that sailor to make the purchase, and drove off in his car

with the intent to consummate the sale.  Shortly thereafter, the

Appellant's car was stopped by law enforcement agents, and the

Appellant was apprehended.  No marijuana was ever purchased.

The Appellant now asserts that his plea was improvident because

the military judge failed to adequately explain the elements of

attempted wrongful distribution of marijuana.

## DISCUSSION

For this Court to find a plea of guilty to be knowing and

voluntary, the record of trial "must reflect" that the elements

of "each offense charged have been explained to the accused" by

the military judge.  United States v. Care, 18 C.M.A. 535, 541

(1969).  See Art. 45(a), UCMJ, 10 U.S.C. § 845(a) (2002); R.C.M.

910(c)(1).  If the military judge fails to do so, he commits

reversible error, unless "it is clear from the entire record

that the accused knew the elements, admitted them freely, and

pleaded guilty because he was guilty."  United States v. Jones,

34 M.J. 270, 272 (C.M.A. 1992).  Rather than focusing on a

technical listing of the elements of an offense, this Court

looks at the context of the entire record to determine whether

an accused is aware of the elements, either explicitly or

inferentially.  Id.; United States v. Pretlow, 13 M.J. 85, 88

(C.M.A. 1982); United States v. Kilgore, 21 C.M.A. 35, 37

(1971).

The elements of attempt are:

4

     (1)   That the accused did a certain overt act;
     (2)   That the act was done with specific intent to commit a certain offense under the code;
     (3)   That the act amounted to more than mere preparation; and
     (4)   That the act apparently tended to effect the commission of the intended offense.

Manual for Courts-Martial, United States (2002 ed.) Part IV, at para 4(b).   In this case, although the military judge advised the Appellant of the elements of the intended offense, he failed to explain explicitly to the Appellant any of the four elements of the offense of attempt.  The Appellant was never advised that the offense requires that he commit an "overt act," with "specific intent," and that the act amount "to more than mere preparation" and apparently tend "to effect the commission of the intended offense."  Nor does the record reflect that the Appellant understood all of these concepts.

Unlike some simple military offenses, attempt is a more complex, inchoate offense that includes two specific elements designed to distinguish it from mere preparation.  See United States v. Byrd, 24 M.J. 286, 288-90 (C.M.A. 1987).  See also United States v. Schoof, 37 M.J. 96, 103 (C.M.A. 1993).  The distinction between preparation and attempt has proven difficult for courts and scholars alike.  See United States v. Church, 32 M.J. 70, 72 (C.M.A. 1991); Wayne R. LaFave, Criminal Law 544-552 (3d ed. 2000)(discussing four tests, to include "The Proximity Approach," "The Probable Desistance Approach," "The Equivocality

Approach," and "The Model Penal Code Approach."). Although the Appellant is not entitled to receive a hornbook review of the distinction, the record must objectively reflect that the Appellant understood that his conduct, in order to be criminal, needed to go beyond preparatory steps and be a direct movement toward the commission of the intended offense. Pretlow, 13 M.J. at 87-89. Because the record before us does not evidence, either explicitly or inferentially, that the Appellant understood the distinction or that he had sufficient knowledge of any of the four elements of attempt, we conclude that the Appellant's plea of guilty to attempted distribution of marijuana was improvident.

### CONCLUSION

The decision of the United States Coast Guard Court of Criminal Appeals is reversed as to Specification 2 of the Charge and as to sentence, but is affirmed in all other respects. The finding of guilty of Specification 2 of the Charge and the sentence are set aside. The record of trial is returned to the General Counsel of the Department of Transportation for remand to the Court of Criminal Appeals. That court may either dismiss Specification 2 of the Charge and reassess the sentence, or it may order a rehearing. Thereafter, Article 67, UCMJ, 10 U.S.C. § 867 (2002), will apply.

United States v. Redlinski, No. 02-0135/CG

CRAWFORD, Chief Judge (dissenting):

Rule for Courts-Martial 910(c) [hereinafter R.C.M.], like Federal Rule of Criminal Procedure 11(c) [hereinafter Federal Rule], requires that Appellant understand the nature of the offense to which a guilty plea is offered.  As the Supreme Court has indicated, this may be satisfied by the "factual statement," the "stipulation," or "representation" by counsel that the offense was committed.  Henderson v. Morgan, 426 U.S. 637, 646 (1976).  Because R.C.M. 910(c) is similarly satisfied here, I respectfully dissent.

When an accused enters a guilty plea, the military judge must ensure that the plea meets the requirements of the Constitution, Uniform Code of Military Justice [hereinafter UCMJ], and Manual for Courts-Martial, United States (2002 ed.) [hereinafter MCM]. In McCarthy v. United States, 394 U.S. 459, 466 (1969), the Supreme Court stated:

> By personally interrogating the defendant, not only would the judge be better able to ascertain the plea's voluntariness, but he also will develop a more complete record to support his determination in a subsequent post-conviction attack . . . .  Both of these goals are undermined in proportion to the degree the . . . judge resorts to "assumptions" not based upon record responses to his inquiries.

United States v. Redlinski, No. 02-0135/CG

In United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969),

the Court applied McCarthy to the military, establishing a much

more detailed plea inquiry than had previously been required.[1]

In 1984, R.C.M. 910(c)(1)-(5) codified the elements of a

Care inquiry, requiring that the accused understand (1) the

---

[1] It will be seen that the . . . [military judge] explained that he had
to determine voluntariness and providency personally and asked the
accused (1) if he knew his plea subjected him to a finding of guilty
without further proof; (2) if he knew he could be sentenced to the
maximum sentence; (3) if he understood the meaning and effect of his
plea; (4) if he knew that the burden was on the Government to prove his
guilt beyond a reasonable doubt; (5) if he knew he was entitled to plead
not guilty; (6) if he knew the elements of the offense; (7) if he had
adequate opportunity to consult with counsel on any matters he felt
necessary; (8) if he was satisfied with his counsel; (9) whether counsel
advised him of the maximum punishment; (10) if the decision to negotiate
a plea originated with him; (11) if his plea was given voluntarily; (12)
if anyone used force or coercion to get him to enter a guilty plea; (13)
if he believed it was in his best interest to plead guilty; (14) if his
plea was the product of free will and a desire to confess his guilt; and
(15) if he knew he could withdraw his plea.  In each instance, the
answer was "yes."

   The procedure that was followed here fell short of the one
recommended ... because the . . . [military judge] did not personally
inform the accused of the elements constituting the offense and he did
not establish the factual components of the guilty plea....

                              * * *

   [T]he record of trial ... must reflect not only that the elements
of each offense charged have been explained to the accused but also that
the military trial judge . . . has questioned the accused about what he
did or did not do, and what he intended (where this is pertinent), to
make clear the basis for a determination by the military trial judge ...
whether the acts or the omissions of the accused constitute the offense
or offenses to which he is pleading guilty . . . .

   Further, the record must also demonstrate the military trial judge
. . . personally addressed the accused, advised him that his plea waives
his right against self-incrimination, his right to a trial of the facts
by a court-martial, and his right to be confronted by the witnesses
against him; and that he waives such rights by his plea.

United States v. Care, 18 C.M.A. 535, 539-41, 40 C.M.R. 247, 251-53
(1969).

2

nature of the charges to which the plea is offered; (2) the possible sentence for each offense to which the plea is offered; (3) the consequences of the plea; (4) right to counsel; and (5) what rights will be waived as a result of the plea. Rule for Courts-Martial 910 does not violate either the Constitution or the UCMJ, and therefore is binding upon us. See, e.g., United States v. Scheffer, 523 U.S. 303 (1998); United States v. Kossman, 38 M.J. 258 (C.M.A. 1993).

The analysis to R.C.M. 910(c) indicates that "this subsection is taken from [Federal Rule] 11(c) and is consistent" with the Supreme Court cases of Boykin v. Alabama, 395 U.S. 238 (1969), and McCarthy. Rule for Courts-Martial 910(d), like Federal Rule 11(d), also requires a factual basis for the plea. Most significantly, the language of R.C.M. 910(c) tracks verbatim the language of Federal Rule 11(c). Given the link between Federal Rule 11(c) and R.C.M. 910(c), Supreme Court precedent is applicable in our interpretation of R.C.M. 910.

In Morgan, the Supreme Court addressed how a trial court may determine that the defendant understands the nature of a charge. The defendant, who had a functioning intelligence quotient ranging between 68 and 72, was indicted for first degree murder, but pleaded guilty to second degree murder on the advice of counsel and based on an agreement with a prosecutor. The Court noted that

> [i]n direct colloquy with the trial judge
> respondent stated that his plea was based on the
> advice of his attorneys, that he understood he
> was accused of killing Mrs. Francisco . . ., that
> he was waiving his right to jury trial and that
> he would be sent to prison. There was no
> discussion of the elements of the offense of
> second-degree murder, no indication that the
> nature of the offense had been discussed with the
> respondent, and no reference of any kind to the
> requirement of intent to cause the death of the
> victim.

426 U.S. at 642-43. The Court held that "[s]ince respondent did not receive adequate notice of the offense to which he pleaded guilty, his plea was involuntary and the judgment of conviction was entered without due process of law." Id. at 647.

> There is nothing in this record that can serve as
> a substitute for either a finding after trial, or
> a voluntary admission, that respondent had the
> requisite intent. Defense counsel did not
> purport to stipulate to that fact; they did not
> explain to him that his plea would be an
> admission of that fact; and he made no factual
> statement or admission necessarily implying that
> he had such intent. In these circumstances it is
> impossible to conclude that his plea to the
> unexplained charge of second-degree murder was
> voluntary.

Id. at 646 (emphasis added).

As to the "critical" elements of the offense, the Court noted:

> There is no need in this case to decide whether
> notice of the true nature, or substance, of a
> charge always requires a description of every
> element of the offense; we assume it does not.
> Nevertheless, intent is such a critical element of
> the offense of second-degree murder that notice of
> that element is required.

4

Id. at 647 n.18.

While the Court did not say what obligation the judge had with respect to the elements of the offense, the Court suggested that even if the judge makes no such inquiry, "a representation [on the record] by defense counsel that the nature of the offense has been explained to the accused" will suffice. Id. at 647. Indeed, "it may be appropriate to presume that in most cases defense counsel routinely explained the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Id. The Court presumed that the defense counsel had informed the defendant of the element of the charges that included a count of attempted murder, but no other attempt charges.

In Marshall v. Lonberger, 459 U.S. 422, 438 (1983), the Supreme Court concluded that the defendant's plea was voluntary because he must "have understood the judge's reference to [his] 'attempt on Dorothy Maxwell, with a knife' as a reference to the indictment's charge of attempt to kill." Morgan further suggests that if defense counsel does not certify such advice as to the nature of the offense, a plea is valid only if a defendant provides a "factual statement or admission necessarily implying that he [met all critical elements]." 426 U.S. at 646.

Such a factual statement absolves the judge from making an inquiry into the defendant's understanding of the charges.

Rule for Courts-Martial 910(d), like Federal Rule 11(d), requires that the court ensure that the plea is voluntary and intelligently made.  It requires the military judge to address the accused personally to determine that the plea is voluntary and not "the result of force or threats or of promises apart from the plea agreement under R.C.M. 705."  The discussion to R.C.M. 910 requires that there be a "factual basis for the plea."  In North Carolina v. Alford, 400 U.S. 25, 38 (1970), the Court upheld the plea "[i]n view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence."  The Court continued:

> Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea ... and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence.

Id. at 38 n.10 (citations omitted).  Conversely, if such a factual basis is established, the judge is not prevented from accepting an otherwise intelligent and voluntary plea even if in the civilian sector he refuses to admit guilt.  Such an Alford

6

plea is not permissible under Article 45, UCMJ, 10 U.S.C. § 845 (2002).

In sum, Supreme Court precedent implies that R.C.M. 910(c), like its Federal Rule 11(c) counterpart, may be satisfied by a factual inquiry, stipulation, or counsel's assurance that the accused committed the offense. The facts in this case show comportment with this precedent and further demonstrate that there is no "'substantial basis' in law and fact for questioning the guilty plea." United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991). Appellant read the stipulation and discussed it with his defense counsel, and he agreed that the facts set forth in the stipulation of fact were accurate and that it was entered into voluntarily. Appellant understood that the stipulation would be used during his providence inquiry. Appellant's clear understanding of the nature of the offense becomes even more evident when the elements of wrongful distribution are considered in discrete components as follows:

> (1) That the accused did a certain overt act;
> (2) That the act was done with the specific intent to commit a certain offense under the [UCMJ];
> (3) That the act amounted to more than mere preparation; and
> (4) That the act apparently tended to effect the commission of the intended offense.

MCM Part IV, para. 4(b)(1)-(4)(emphasis added).

Overt act. Twice Appellant admitted on February 16 he again "agreed to meet Petty Officer Agati someplace outside of

7

Montauk and this time . . . to give him two ounces of marijuana for $300."

Intent. He twice admitted that he took "the $300 and . . . intended to buy marijuana . . . ."

More than mere preparation. Once he received the money he had planned on buying the marijuana and then "meet up with [Petty Officer Agati] again later that day." Appellant admitted that but for having been stopped by the Drug Enforcement Agency agents and the agents from the Coast Guard Investigative Service, he would have carried out the crime.

Act tended to affect commission of offense. He fully admitted that he intended to carry out the distribution of the marijuana. The only reason he did not do it was because he was pulled over in his car by five black unmarked cars. He admitted that he intended to distribute marijuana wrongfully on February 16, 1999. Defense counsel assured the military judge that no further questions were necessary to establish a knowing and voluntary plea.

In addition to Appellant's personal admissions under oath, the stipulation of fact supports all four elements.

> On 16 February 1999, SA Redlinski agreed to meet MK2 Agati at a corner store in a small town outside of Montauk, New York. SA Redlinski agreed to take $300.00 from MK2 Agati to purchase 2 ounces of marijuana for MK2 Agati. SA Redlinski believed MK2 Agati was going to sell the marijuana to his cousin to make some quick money to pay bills incurred by his wife. MK2 Agati gave SA

Redlinski $300.00, and SA Redlinski took the money back to Montauk.  On the way back to Montauk to purchase the marijuana, SA Redlinski was stopped by Drug Enforcement Agency and Coast Guard Investigative Service Agents in 5 black cars.  SA Redlinski was apprehended at that time.

In keeping with Morgan, this case contained a stipulation of fact, factual admission, a factual inquiry, and assurance from defense counsel that Appellant committed the offense of attempted distribution of marijuana.  Given the existence of these factors, R.C.M. 910 was satisfied, and accordingly, Appellant's plea was knowing and voluntary.

For these reasons, I would affirm the decision below.