UNITED STATES, Appellee

v.

Peter J. ANZALONE, Jr., Private
First Class, U.S. Marine
Corps, Appellant.

No. 93–0338.
CMR No. 91 2322.

U.S. Court of Military Appeals.

Argued March 17, 1994.

Decided Sept. 30, 1994.

For Appellant: *Lieutenant Brian C. Lansing,* JAGC, USNR (argued); *Lieutenant James R. Chrisfield, Jr.,* JAGC, USNR.

For Appellee: *Lieutenant Scott A. Browne*, JAGC, USNR (argued); *Colonel T.G. Hess*, USMC and *Commander S.A. Stallings*, JAGC, USN (on brief).

### Opinion of the Court

WISS, Judge.

Pursuant to appellant's guilty pleas, a special court-martial convicted him of willfully disobeying an order from a superior noncommissioned officer (2 specifications), assault with a dangerous weapon, and communicating a threat, in violation of Articles 91, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 891, 928, and 934, respectively. Thereafter, the military judge sentenced appellant to a bad-conduct discharge, confinement for 3 months, hard labor without confinement for 3 months, forfeiture of $300.00 pay per month for 5 months, and reduction to the lowest enlisted grade. The convening authority suspended the period of confinement exceeding 60 days pursuant to a pretrial agreement but otherwise approved these results, and the Court of Military Review affirmed.

On appellant's petition, we granted review of the following modified issue:

WHETHER APPELLANT'S GUILTY PLEA TO AN ATTEMPT–TYPE ASSAULT WAS IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO ELICIT A FACTUAL PREDICATE FOR AN OVERT ACT BEYOND MERE PREPARATION. (*See* para. 54c(1) (c) (i), Part IV, Manual for Courts–Martial, United States, 1984).

Now, we conclude that appellant's pleas were not improvident, and so the decision below can be upheld.

### I

In connection with the issue now before us, the providence inquiry indicates that appellant had a verbal confrontation with the victim, a superior noncommissioned officer,

which the victim apparently escalated into a physical altercation. Thereafter, each went to his respective tent. At his, appellant retrieved his M16A2 rifle, pulled back the charging handle, chambered a round from the already-loaded magazine, and headed for the victim's tent while carrying his rifle "at port arms."[1] Somewhere between 20 and 50 yards from his destination, appellant was stopped by two other noncommissioned officers, who asked appellant for his weapon and ammunition; appellant complied.

This incident gave rise to a specification charging appellant with assaulting the victim "by pointing at him with a dangerous weapon, to wit: a loaded firearm." Appellant pleaded guilty to this specification by excepting out "pointing" and substituting therefor "brandishing."

After some initial misunderstanding during the providence inquiry, defense counsel clarified that "[t]he theory of culpability, sir, is an attempt-type [assault] rather than an offer-type" assault. *See* para. 54c(1) (b) (i) and (ii). Appellant confirmed that, when he was stopped, he was "walking toward [the victim], in his direction, or going to go in his direction...." He acknowledged that, even though the victim was some distance away at that point, he was "carrying this weapon with a view towards approaching him with it...." When the military judge asked, "You were just going to get back at him?," appellant answered, "Yes, sir."

This matter clarified, the military judge advised appellant of the elements of an attempt-type assault: That appellant "attempted to do bodily harm to" the victim; that he did so with a loaded M16A2 rifle; "that the attempt was done with unlawful force or violence"; and "that the weapon was used in a manner likely to produce grievous bodily harm." *See* para. 54b(4) (a). Further, he advised appellant that "an attempt to do bodily harm is an overt act which amounts to more than mere preparation and is done with

---

1. "Port arms" is a "[p]osition in the manuals of rifle and carbine, in which the weapon is held with the barrel up, diagonally across the body, along a line from the left shoulder to the right hip." Army Regulation 310–25, Dictionary of · United States Army Terms 121 (21 May 1986). It is the position most commonly assumed for carrying a rifle while walking or running so that the rifle is at the ready for aiming and firing.

the apparent present ability to do bodily harm to another." Appellant admitted that these elements described his actions—that he had done "all [he] could do, other than approach the" victim and that, "but for the fact that [the other noncommissioned officers] stopped [him, he] would have[.]" Additionally, he admitted that the loaded rifle was a weapon and that it "was used in a manner likely to produce grievous bodily harm, had [he] not been stopped[.]" He answered affirmatively to questions whether he used the weapon, whether the use was with unlawful force or violence and not in self-defense, and whether he "attempted to do bodily harm to" the victim.

## II

### A

Now, appellant contends that his pleas to aggravated assault were improvident because his actions did not go beyond mere preparation and, therefore, do not constitute an attempt as a matter of law, citing *United States v. Schoof*, 37 MJ 96 (CMA 1993). In this regard, he argues, first, that the record does not establish that he actually had begun moving toward the victim's tent before he was stopped and that, without such movement, he had not crossed the line of mere preparation; and, second, that even if he had begun movement toward the victim's tent, he had not crossed the mere-preparation line because he had not reached the point at which he actually could have inflicted a battery on his victim.

Distinct from the preceding contention, appellant asserts a second flaw in the providence of his pleas to aggravated assault: In his view, the record does not establish that he had the specific intent to inflict grievous bodily harm on his victim if and when he had arrived at the victim's tent. Such intent being a prerequisite to conviction of an attempt-type assault, appellant argues that his conviction cannot stand on this record.

The Government counters that appellant's actions "clearly crossed" the mere-preparation/substantive-step "dividing line." Answer to Final Brief at 5. First, the Government

disputes appellant's reading of the record to reflect that he had not yet begun moving toward the victim's tent when intercepted and disarmed. Instead, the Government urges, "Appellant's conduct therefore clearly constituted more than mere preparation, but set in motion the events which if uninterrupted, would have consummated his attack and resulted in grievous bodily injury to his intended victim." Answer to Final Brief at 6. Second, the Government figuratively scratches its head in an effort to understand appellant's claim that there could be no attempt until appellant reached the point at which he actually could have inflicted the harm on his victim. Nothing in the law of attempts, responds the Government, requires that the accused have reached such a late point in his trek toward completing his intended crime, *see United States v. Schoof, supra* at 102; and, despite appellant's apparent contention to the contrary, the Government argues that there is no distinction between the legal requirements of attempts as prosecuted under Article 80, 10 USC § 880, and those of attempted battery prosecuted as an assault under Article 128, *see* § 211.1, Comment, ALI Model Penal Code, *reprinted in ALI Model Penal Code and Commentaries* (Part 2) 184 (1980).

In a fallback position, the Government contends that, even if we should determine that appellant's pleas to assault with a dangerous weapon were improvident, we may affirm a conviction for *attempted* assault with a dangerous weapon. *See United States v. Epps*, 25 MJ 319, 323 (CMA 1987) ("While Article 45 seeks accuracy in pleas of guilty, [*United States v.*] *Felty* [, 12 MJ 438 (CMA 1982) ] and its progeny establish that, if an accused pleads guilty and then at the providence inquiry he gives sworn testimony which clearly establishes his guilt of a different but closely-related offense having the same maximum punishment, we may treat that accused's pleas of guilty as provident."). It is not clear from the Government's brief, however, how it may satisfy the step-beyond-mere-preparation requirement for attempted assault as a violation of Article 80 any more easily than it can for the attempt-type theory of assault under Article 128. Further, appel-

lant resists this position by arguing that it would amount to "judicial legislation," since paragraph 54d of the Manual for Courts–Martial does not recognize an "attempt" under Article 80 as a lesser-included offense of assault. *Accord* para. 4c(5)(f), Part IV, Manual, *supra* (Change 3) ("While most attempts should be charged under Article 80, the following attempts are specifically addressed by some other article, and should be charged accordingly . . . . (f) Article 128—assault.").

As to the second flaw in the providence of his pleas that is urged by appellant, the Government calls it "far-fetched" to suggest, based on this record, that appellant had "some non-violent intent" when, right after having been physically and psychologically abused by his intended victim, appellant locked and loaded live ammunition in his M16A2 rifle and headed toward the victim's tent. Answer to Final Brief at 13 n. 5. Instead, the Government points out that the record fairly reflects appellant's admission—which is fully consistent with his objective actions—that he intended to inflict grievous bodily harm on his victim and that he would have, had he not been stopped.

### B

Article 128 provides in full, as follows:

(a) Any person subject to this chapter who *attempts or offers with unlawful force or violence to do bodily harm to another* person, whether or not the attempt or offer is consummated, *is guilty of assault* and shall be punished as a court-martial may direct.

(b) Any person subject to this chapter who—

(1) *commits an assault with a dangerous weapon* or other means or force likely to produce death or grievous bodily harm; or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;

*is guilty of aggravated assault* and shall be punished as a court-martial may direct.

(Emphasis added.) Plainly read, this statute defines "assault" as an attempt to commit a battery or an offer to commit a battery; and where an attempt or offer is to batter with a dangerous weapon, the assault thereby becomes aggravated in character and in punishment. *Cf. United States v. Schoolfield,* 40 MJ 132 (CMA 1994).

Assault as an attempted battery is the original, common-law notion of that crime, while assault as an offer to batter—or, phrased differently, as a threat of imminent battery—was originally a civil-law concept of a tort. The merger of the two concepts under one criminal umbrella of "assault" occurred over many decades; even then, however, they remained distinct, alternative theories of the crime, each with quite different aspects. For a virtual treatise on "assault," "battery," and the various theories of each, *see* Judge Moylan's opinion in *Lamb v. State,* 93 Md.App. 422, 613 A.2d 402 (1992), *modified in part, Wieland v. State,* 101 Md.App. 1, 643 A.2d 446, 464 (1994).

The theory upon which appellant pleaded guilty and the theory upon which the military judge found those pleas provident and accepted them was the attempted-battery theory of assault. Accordingly, our starting point in resolving the disputes and contentions between the parties is to determine what constitutes an "attempt" in the context of an attempted battery under Article 128.

It is apparent from our earlier quotation of the full text of Article 128 that Congress did not further expound there on the nature of an attempt. Elsewhere, however, Congress did further define precisely that same term, as it is applied to most all other criminal attempts. In Article 80(a), Congress stated:

An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

Thus, close to the very outset of its enumeration of the punitive articles of the Uniform Code of Military Justice, Congress defined the crime of "attempt . . . to commit" some other crime. Later in the Code, when Congress infrequently specifically criminalized an

attempt to commit some particular crime, it did not further amplify what it meant by "attempt" in such contexts. *See, e.g.*, Art. 106a, 10 USC § 906a, Espionage (communication, delivery, or transmittal of certain material to foreign agents "with intent or reason to believe that" it would "be used" to injure the United States, "or attempts to" do so); Art. 128 ("attempts" to batter).

■ Therefore, with no hint of congressional intent to the contrary, we have (*see United States v. Schoof*, 37 MJ 96 (prosecution of attempted espionage under Article 106a)) and we will here (prosecution of attempted assault under Article 128) measure an alleged "attempt" under other provisions of the Code against the definitional yardstick that Congress provided for that term in Article 80. *See generally Lamb v. State*, 613 A.2d at 407 (Attempted battery as a criminal assault "enjoys a special name or label of its own, [but] it still shares the characteristics of all other attempts."); W. LaFave and A. Scott, *Substantive Criminal Law* § 7.16 at 312 (1986) (equating "assault of the attempted-battery type" to attempts to commit any crime).

■ In this light, then, assault as an attempted battery, like all other criminal attempts, requires that an accused have a specific intent to commit a battery and that the accused take some act, beyond mere preparation, that tends to effect the intended battery. While this providence inquiry is not a model of clarity, we are persuaded that it fairly reflects that appellant did, in fact, begin movement toward his victim's tent before he was intercepted and that his intent in doing so was to do grievous bodily harm to his victim.

■ Appellant acknowledged that his goal was to "get back" at his victim. He admitted that his actions met the element that the attempt was "to do bodily harm to" the victim and, later, similarly answered affirmatively when asked whether he "attempted to do bodily harm to" the victim. While the words "specific intent" were never uttered, the requisite intent is fairly inferable—both from these admissions and from the events as appellant himself described them—that

appellant's conscious and specific goal was to do grievous bodily harm to his victim. *See United States v. Davenport*, 9 MJ 364, 367 (CMA 1980) (providence inquiry must contain accused's admission of each element and accused's revelation of factual circumstances that "objectively support" his plea). Moreover, there is no "evidence in 'substantial conflict' " with appellant's plea of guilty in connection with his intent so as to warrant setting aside his pleas. *See United States v. Stewart*, 29 MJ 92, 93 (CMA 1989).

■ As to whether appellant had taken some step beyond mere preparation that tended to effect his intended battery, appellant himself acknowledged that, having retrieved his rifle, locked a round in the chamber, and begun his movement toward his victim's tent, he had done "all [he] could do" short of accomplishing his intended crime. There is no requirement under the law of attempts that the trip to the doorstep of the intended crime be completed in order for the attempt to have been committed. *See United States v. Schoof, supra*. Appellant's actions, to the point of being stopped, went beyond merely devising the means for injuring the victim and, instead, were "strongly corroborative of the firmness of [his] criminal intent." 37 MJ at 103, *quoting United States v. Byrd*, 24 MJ 286, 290 (CMA 1987) (Everett, C.J.). Preparations were over, and the crime was afoot.

Even giving appellant's reading of the inquiry the greatest deference, it surely is not clear that, at the point at which he was stopped, he had not yet crossed the line. Under circumstances like that in *Schoof*, we had this to say:

At the very least, Schoof's acts are in the "twilight zone" in which the line between preparation and substantive step may not be clear. *See United States v. Church*, 32 MJ [70] at 72 [ (CMA), *cert. denied*, [501 U.S. 1231], 111 S.Ct. 2853 [115 L.Ed.2d 1021] (1991) ]. As such, the court below erred in holding that, as a matter of law, Schoof's actions never went beyond mere preparation. Quite simply, where an accused pleads guilty and during the providence inquiry admits that he went beyond

mere preparation and points to a particular action that satisfies himself on this point, it is neither legally nor logically well-founded to say that actions that may be ambiguous on this point fall short of the line "as a matter of law" so as to be substantially inconsistent with the guilty plea.

37 MJ at 103.

## C

Concluding, as we do, that appellant's pleas of guilty to assault under the theory of an attempted battery were provident, we do not need to speak exhaustively with regard to the parties' disagreement over the legitimacy of a crime under Article 80 of attempted assault. We do pause to offer some comment before closing, however.

Judge Moylan's excellent discussion of the law of assault and of battery in *Lamb v. State, supra,* analyzes "[a]ssault of the attempted-battery" type as "an inchoate crime" and assault of the offer or "intentional threatening variety" as "fully consummated," and in no "sense inchoate." 613 A.2d at 412. This difference leads to several distinctions between the requirements and the repercussions of the two types of assault, one of which concerns whether there logically can be an "attempted assault." Judge Moylan opines:

> The answer is obviously both "no" and "yes." There may not, of course, be an attempted assault of the attempted-battery variety. That type of assault is already inchoate and there may not be an attempted attempt.
>
> Where the assault, on the other hand, is the intent-to-frighten variety, there is no reason whatsoever why there cannot be an attempt to commit it. One attempts to put a victim in reasonable apprehension of an imminent battery, but, for some reason, the victim (unconscious, blind, deaf) fails to apprehend the danger. The assault that

was contemplated was not of an inchoate crime but of a fully consummated crime. It, therefore, like any other crime may be attempted as long as the normal prerequisites of attempt law are satisfied. It would not be an attempted attempt, which is the only thing that gave rise to the old cliche in the first place [that "there cannot be an attempted assault"].

613 A.2d at 419–20. That said, we await another day for a fuller consideration of this issue.[2]

## III

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge CRAWFORD concur.

GIERKE, Judge, with whom COX, Judge, joins (dissenting):

I would reverse the decision below as to the conviction of aggravated assault, on the ground that the plea of guilty was based on an inadequate factual predicate and is, therefore, improvident.

In my view the factual predicate elicited by the military judge was insufficient to establish more than mere preparation. At the outset, it should be noted that brandishing a weapon—the predicate on which appellant's plea was based—contemplates holding or moving the weapon in a menacing or aggressive manner. *See Webster's Ninth New Collegiate Dictionary* 175 (1991). *See also McGee v. United States,* 533 A.2d 1268 (D.C.App.1987) (mere brandishing of weapon insufficient to prove attempt-type battery).

Even allowing for imprecision in the use of the term "brandish," the factual predicate elicited by the military judge in this case is insufficient for an attempt-type assault. The military judge asked appellant, "Was this

---

2. Construction of a substantive criminal statute so as to determine its proper ambit is uniquely within the province of courts; so, notwithstanding appellant's contention, it most surely would not be "judicial legislation" for this Court to conclude in an appropriate case that a prosecution could lie under Article 80 for an attempted offer-variety assault. Any apparent view of the President's to the contrary in the Manual for Courts–Martial is no barrier. *Cf.* Art. 36(a), Uniform Code of Military Justice, 10 USC § 836(a) (President authorized to prescribe rules of procedure and evidence).

Pisciotta [intended victim] in the area?," and appellant responded in the negative. The military judge asked, "Did you go over to him with the weapon in your hand?," and appellant again responded in the negative. Then the military judge asked, "You never came into—near Pisciotta at all?," and appellant responded, "I never advanced on him, sir, no, sir."

Still seeking clarification, the military judge questioned appellant further:

MJ: Did you ever walk towards him or anything else? Did someone grab your weapon or what?

ACC: *I was just standing [sic] in his direction,* sir; and Corporal Quezada and Corporal Vargas approached me; and that's when I gave up the weapon, sir.

MJ: Did they grab the weapon from you?

ACC: No, sir.

MJ: They asked you to turn it over to them?

ACC: Yes, sir.

MJ: And you handed it to them?

ACC: Yes, sir.

MJ: How far away was this Pisciotta away from you at this time?

ACC: About 20 to 50 yards, sir.

MJ: Was he in the general vicinity then?

ACC: Yes, sir.

MJ: Well, you know you pled guilty to brandishing the weapon towards him. *Were you walking towards him, in his direction, or going to go in his direction when they stopped you?*

ACC: Yes, sir.

(Emphasis added.) The military judge did not clarify whether appellant's "Yes, sir" applied to "walking towards him" or "going to go in his direction."

After further conversation about the altercation that preceded appellant's acts, the military judge asked, "Where were you going with the rifle?" Appellant responded, "To advance [on] the Corporal, sir." The military judge then asked:

So, would you admit that this terminology you used, "of brandishing at him with a dangerous weapon," was—*even though it was a long ways off, you were carrying this weapon with a view towards approaching him with it, but you were stopped, never got near him?*

ACC: Yes, sir.

(Emphasis added.)

After excluding the possibility that appellant was acting in self-defense, the military judge asked, "You were just going to get back at him?" Appellant answered in the affirmative. The military judge did not ask and appellant did not explain how appellant intended to "get back" at the victim, whether by frightening him, threatening him, injuring him, killing him, or doing something else.

After a recess to reflect on appellant's answers, the military judge resumed the questioning:

Now, PFC, the reason why I've had this recess is: It appears to me that, based upon what you tell me, you were upset with this individual, that you went back to your tent; *you obtained your weapon, chambered a round, came out, intending to approach this Corporal; and, but for the intervention of these two corporals who saw you coming, you might have done something really stupid.*

*Is that not correct?*

ACC: Correct, sir.

MJ: Do you think that's a fair appraisal of what you said?

ACC: Yes, sir.

MJ: It appears that this—rather than an offer-type of assault, where someone sees you—that is, the victim sees you—you're not sure if he saw you at all; *but it appears to be an attempted aggravated assault, whereby you attempted to approach him; and, but for actions totally not under your control, you were stopped.*

*Is that not correct?*

ACC: Yes, sir.

(Emphasis added.)

As he neared the end of his inquiry regarding this offense, the military judge asked, "Are you satisfied that that's an *attempted assault,* as I indicated it to you?" (Emphasis added.) Appellant responded, "Yes, sir."

With respect to the element of the offense requiring that the weapon be "used in a manner likely to produce grievous bodily harm," the military judge asked two questions:

MJ: Are you satisfied that this was indeed a weapon which was a loaded firearm,as I defined that term for you?

ACC: Yes, sir.

MJ: Are you satisfied that the weapon was used in a manner likely to produce grievous bodily harm, had you not been stopped?

ACC: Yes, sir.

Other than obtaining appellant's agreement with the legal conclusion that the weapon was "used in a manner likely to produce grievous bodily harm," the only factual predicate for this element is that appellant was holding a loaded weapon "at port arms."

In my view, the foregoing plea inquiry is an inadequate factual predicate for an attempt-type assault. The most that appellant admitted was an "attempted attempt," which is not a crime. As the majority recognizes, relying on Judge Moylan's excellent analysis, an attempted-battery assault "is already inchoate and there may not be an attempted attempt." 41 MJ at 147.

The law requires more than guilty intentions; it requires an act going beyond mere preparation. *See* 21 Am Jur 2d, *Criminal Law* § 4 at 117–18 ("[T]he law does not concern itself with mere guilty intention, unconnected with any overt act or outward manifestation."). In this case, even appellant's intentions to somehow "get back" at the victim were left unclarified. In my view, merely holding a loaded weapon without advancing on the intended victim or pointing it at anyone or attempting to fire it does not go beyond mere preparation. *See* para. 54c(1)(c) (i), Part IV, Manual for Courts–Martial, United States, 1984 ("[P]icking up a stone without any attempt or offer to throw it, does not constitute an assault."). Accordingly, I dissent.