*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Kenneth OLAYA**
Quartermaster Third Class (E-4), U.S. Navy
Appellant

**No. 201900211**

Decided: 16 November 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Arthur L. Gaston III

Sentence adjudged 22 March 2019 by a general court-martial convened at Naval Support Activity, Naples, Italy, consisting of officer members. Sentence approved by the convening authority: confinement for fifteen months, forfeiture of all pay and allowances, reduction to E-1, and a dishonorable discharge.

For Appellant:
*Captain Marcus N. Fulton, JAGC, USN*

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Judge DEERWESTER delivered the opinion of the Court, in which Chief Judge MONAHAN and Senior Judge STEPHENS joined.

_____

**This opinion does not serve as binding precedent but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

DEERWESTER, Judge:

Appellant was convicted, contrary to his pleas, of one specification of attempted child sex trafficking, one specification of attempted enticement of child prostitution, one specification of attempted illicit sexual conduct in a foreign place, and one specification of patronizing prostitutes in violation of Article 134, Uniform Code of Military Justice [UCMJ], as well as one specification of attempted sexual assault of a child, in violation of Article 80, UCMJ.[1]

Appellant asserts two assignments of error [AOEs]: (1) the evidence is not factually sufficient because the Government did not prove beyond a reasonable doubt that the fictional child involved in the attempted sexual assault of a child specification was less than sixteen years old and that Appellant was not entrapped; and (2) Appellant deserves a corrected promulgating order which accurately reflects language in the specification struck pre-trial. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant, a twenty-five-year-old Sailor assigned to USS TYPHOON (PC 5) in Bahrain, was contacted on a dating application by a woman named "Kanya."[2] Kanya told Appellant she was a Thai prostitute. But she was actually a special agent with the Naval Criminal Investigative Service [NCIS]. Kanya asked Appellant if he was interested in sponsoring a young Thai prostitute to live with him in his apartment; he could keep a portion of her earnings and also have sex with her as much as he desired. Appellant

_____

[1] 10 U.S.C. §§ 934, 880. The military judge conditionally dismissed the attempted enticement of child prostitution and attempted illicit sexual conduct in a foreign place specifications based on an unreasonable multiplication of charges.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

expressed his interest and they switched to chatting over a more secure social media application. When asked by NCIS about his prostitute preferences, Appellant told Kanya he preferred a "younger" girl and she responded, "Great I have one 16 coming from Thailand very soon."[3] Appellant and Kanya arranged to meet at a hotel close to Appellant's apartment on the following Wednesday, which was 3 January 2018. Kanya asked Appellant to bring two condoms and 10 Bahraini Dinar[4] in a plastic bag. Appellant asked if Kanya had any girls who were immediately available, but she replied that she did not.

A couple of days after their initial conversation, Kanya messaged Appellant and told him the child-prostitute—"Laya"—would be turning sixteen on the day after their scheduled meeting at the hotel. Laya's purported 16th birthday was Thursday, 4 January 2018. Kanya told Appellant, "Laya 16th birthday on thursday so u can bring Preisent LOL. U are Present,"[5] to which Appellant responded "Lol that's good."[6]

In the interim, Appellant and Kanya discussed logistics about the hotel and other plans so he could meet the fifteen-year-old Laya for sex in a hotel room. On Wednesday, 3 January 2018—the day of the scheduled rendezvous—Appellant and Kanya communicated back and forth about when Appellant could arrive due to his work schedule. Finally, at 1856, Appellant messaged Kanya that he was en route to the hotel in his car. He arrived, parked, and went to the front desk for his key to Room 1105. At 1945, Appellant messaged Kanya "Okay. She in there? Not there."[7] At approximately 2000, NCIS special agents who were expecting Appellant, apprehended him outside of Room 1105. This was about four hours before Laya would have turned sixteen had she been an actual person.

---

[3] Pros. Ex. 4 at 2.

[4] The Bahraini Dinar is the national currency of the Kingdom of Bahrain.

[5] *Id*. at 6.

[6] *Id*.

[7] *Id*. at 12.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

We review Appellant's convictions for legal and factual sufficiency de novo.[8] The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this Court is] convinced of [A]ppellant's guilt beyond a reasonable doubt."[9] In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[10] When conducting this review, we are "limited to the evidence presented at trial."[11] Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict.[12]

When testing for legal sufficiency, we look at "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[13]

To sustain an attempt conviction under Article 80, UCMJ, the Government must prove beyond a reasonable doubt: (1) that Appellant made a certain overt act; (2) that amounted to more than mere preparation; (3) that apparently tended to effect the commission of a crime; and (4) that the act was done with specific intent to commit an offense under the UCMJ.[14] Here, the underlying offense was sexual assault of a child.

---

[8] UCMJ art. 66; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[9] *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation, internal quotation marks, and emphasis omitted).

[10] *Washington*, 57 M.J. at 399.

[11] *United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016) (quoting *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007)).

[12] *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001).

[13] *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Robinson*, 77 M.J. 294, 297-98 (C.A.A.F. 2018)

[14] 10 U.S.C. § 880.

We have previously held that a substantial step must be "an act that is strongly corroborative of the firmness of the accused's criminal intent."[15] It must "unequivocally demonstrat[e] that the crime will take place unless interrupted by independent circumstances."[16] Travel has traditionally constituted a substantial step in prosecution for child sex assault cases.[17]

Appellant challenges whether the Government proved beyond a reasonable doubt that the fictitious victim in this case was under sixteen when he was apprehended. Confusion as to the age resulted from a poorly planned NCIS sting operation in which Appellant was originally told the fictitious victim was sixteen years old, but then later told she actually was about to turn sixteen the day after the arranged meeting. Complicating the operation even more, the fictitious victim was to arrive in Bahrain from Thailand, on 3 January 2018, which was the day before she turned sixteen. Appellant correctly points out that there is a four hour time difference between Thailand and Bahrain, such that 0001 in Thailand is 2001 the day before in Bahrain. Although the original meeting was planned for 1730 (Bahrain time) on 3 January, Appellant did not actually arrive at the hotel until 1945, when he was arrested outside the fictitious victim's hotel room.

Although the contrived time of the fictitious victim's birthday made it difficult for the Government to prove its case, we are convinced it established all the required elements beyond a reasonable doubt. Appellant knew the fictitious victim was only fifteen years old four days before their meeting. Once he learned she was fifteen, and that he would be her "birthday present," he replied "LOL that's good." He then spent the next several days requesting pictures; asked Kanya if she was in Bahrain yet, and proposed meeting her earlier in the day of the scheduled meeting. Appellant then clarified what he was to bring, and headed toward the hotel around 1900 due to an unexpected call-back from work. Once he arrived, he immediately went to the front desk

---

[15] *United States v. Williamson*, 42 M.J. 613, 616 (N-M. Ct. Crim. App. 1995) (citing *United States v. Byrd*, 24 M.J. 286 (C.M.A. 1987)).

[16] *United States v. Wincklemann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (quoting *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007)).

[17] *See, e.g.*, *United States v. Beltran*, No. 201500270, 2017 CCA LEXIS 96 (N-M. Ct. Crim. App. Feb. 14, 2017) (unpublished op.); *United States v. Grina*, No. 201700008, 2018 CCA LEXIS 61 (N-M. Ct. Crim. App. Feb. 8, 2018) (unpublished op.); (*United States v. Keeter*, No. 201700119, 2018 CCA LEXIS 474 (N-M. Ct. Crim. App. Oct. 3, 2018) (unpublished op.).

as directed, and then went to Room 1105—also as directed. It is there that he was apprehended.

Appellant committed all elements of the offense prior to the fictitious victim's 16th birthday.[18] Once he decided to travel to the room, he took a substantial step that amounted to more than mere preparation. The Court of Appeals for the Armed Forces has "recognized that a substantial step could be comprised of something as benign as travel, arranging a meeting, or making hotel reservations."[19] Appellant did two of these three, and was instructed to make use of the hotel reservations. He did all of this while the fictitious prostitute was still only fifteen, regardless of the time zone used to calculate the exact moment of her fictitious sixteenth birthday.

The case against Appellant was strong. His own words were captured by the NCIS special agent during the investigation and admitted into evidence. He was apprehended in the arranged hotel, immediately outside the room where the NCIS special agent told him a fifteen-year-old girl was waiting to have sex with him. Though he did not have the two condoms he was told to bring, he did bring all other items discussed prior to the meeting. After carefully reviewing the record of trial and considering all of the evidence in a light most favorable to the prosecution, we are convinced a rational factfinder could have found Appellant attempted to sexually assault a child under the age of sixteen. Also, having weighed all the Government and Defense evidence admitted at trial and made allowances for not having personally observed the witnesses, we too are convinced beyond a reasonable doubt of Appellant's guilt to the charges and specifications.

## B. Entrapment

At trial, Appellant asserted the affirmative defense of entrapment. The military judge properly instructed the members under Rule for Courts-Martial [R.C.M.] 916(g). On appeal, Appellant again claims the Government entrapped him and therefore his convictions are both legally and factually insufficient. Because we find the Government did not induce Appellant into his actions, and Appellant acted according to his predisposition, he was not entrapped.

---

[18] Even if this Court were to find the fictitious victim turned sixteen at 2000 in Bahrain, as Appellant has urged, all elements of the offense were committed prior to 2000, while the fictitious victim was still only fifteen.

[19] *United States v. Hale*, 78 M.J. 268, 272 (C.A.A.F. 2019).

*1. Inducement*

For the Government to entrap someone, it must first engage in some kind of inducement.[20] Inducement requires more than the Government simply providing the "opportunity or facilities to commit the crime" but must rise to the level of "conduct that creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense."[21] Inducement may take the form of pleas, coercion, threats, or fraudulent representations.

Appellant argues the Government agent posing as "Kanya" induced him to action. Specifically, Appellant points out that the NCIS special agent proposed the arrangement, and first told Appellant that the prostitute was already sixteen years old. Only after an agreement was made to meet the prostitute did the girl's age get lowered to fifteen. As such, Appellant contends the Government did not establish beyond a reasonable doubt that Appellant had a predisposition to commit the offense and was not induced.

In reviewing the conversations, we do not agree with Appellant's characterization. When the NCIS special agent suggested Appellant house a Thai prostitute in his Bahrain apartment, he immediately accepted. Once NCIS told Appellant to switch the conversation to a more secure platform, Appellant immediately did so, again showing interest for both the girl and the arrangement. When the basic arrangement was agreed to, Appellant asked several questions about specifics, to include whether Kanya had additional girls that could live with him. When asked whether he preferred younger or older prostitutes, Appellant immediately replied "younger." When told Laya would actually only turn sixteen after they met to have sex, Appellant replied "LOL," and asked to meet with the now-fifteen-year-old prostitute earlier than the arranged time. For an additional three days after learning that Laya was only fifteen, Appellant clarified what he needed to bring to the meeting; asked for several pictures of the young prostitute; and tried to negotiate an earlier time on the day of the arranged meeting.

Even if Appellant's view of the communications was accurate, this would still not rise to the level of Government inducement. We do not agree that an undisposed person or an ordinary law-abiding person would be induced to sexual contact with a fifteen-year-old girl merely by an invitation to profit

---

[20] *United States v. Howell*, 36 M.J. 354, 359-60 (C.M.A. 1993).

[21] *United States v. Hall*, 56 M.J. 432, 436-37 (C.A.A.F. 2002) (citations and internal quotation marks omitted).

from her earnings. We further do not agree that an undisposed person would be induced to sexual contact with a fifteen year old with a gift of an expensive hotel room in Bahrain.

### 2. Predisposition

A predisposition is demonstrated when "a person accepts a criminal offer without being offered extraordinary inducements."[22] The Government is not required to have evidence of an accused's criminal activity before approaching.[23] Here, we find no "extraordinary inducements" in the communications between the NCIS special agent and Appellant. The overall tone of the conversation was a straightforward agreement to house a "younger" prostitute that Appellant was told was about to turn sixteen. The Government did not use an elaborate or confusing scheme, in which an innocent person could inadvertently cross the threshold of misconduct.[24]

It was Appellant and not NCIS who requested to meet the fifteen year old multiple times. It was Appellant who repeatedly wanted to see pictures of the child prostitute, clarified what items he was to bring, and whether Kanya had other younger prostitutes for him to both sleep as well as live with. It was Appellant who chose to arrive the day before the girl's 16th birthday to have sex with her, after discussing the possibility of moving the date to the following day. Appellant's own actions demonstrated his predisposition to the criminal conduct.

## C. Error in Promulgating Order

The court-martial order [CMO] does not accurately reflect Appellant's findings. Pursuant to a motion for a minor change made by the Government, the military judge narrowed the language of Specification 4 of Charge I, by striking the language "between March 2017 and"—leaving a specific month and date of the alleged violation vice a range.[25] The CMO does not reflect this minor change. Although we find no prejudice from this scrivener's error,

---

[22] *United States v. Bell*, 38 M.J. 358, 360 (C.M.A. 1993) (quoting *United States v. Evans*, 924 F.2d 714, 718 (7th Cir. 1991)).

[23] *Id.* (citing *United States v. Swets*, 563 F.2d 989, 991 (10th Cir. 1977), *cert. denied*, 434 U.S. 1022 (1978)).

[24] *See, e.g.*, *Jacobson v. United States*, 503 U.S. 540 (1992) (finding the government enticed appellant into purchase of explicit materials in complicated scheme mixing legal and political materials with illegal explicit materials).

[25] R. at 162.

Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[26]

### III. CONCLUSION

After careful consideration of Appellant's assigned error, the record of trial, and the parties' submissions, we conclude the findings are correct in law and fact. Accordingly, the findings are **AFFIRMED**.

The supplemental CMO shall reflect an accurate summary of Appellant's pleas and findings. The CMO shall except out the words "between March 2017 and," from Specification 4 of Charge I.

Chief Judge MONAHAN and Senior Judge STEPHENS concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[26] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).